1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9
10

* * *

11   RONALD D. DIGGS,                                    )       Case No.: 2:09–cv–02339–RLH–CWH
                                                         )
12                      Plaintiff,                       )                    **O R D E R**
                                                         )
13          vs.                                          )       (Motion for Summary Judgment– #88;
                                                         )        Motion for Summary Judgment– #89)
14   LAS VEGAS METROPOLITAN POLICE                       )
     DEPARTMENT, a political subdivision of the          )
15   State of Nevada; SGT. D. WALBURN,                   )
     individually; OFFICER T. ROBERTS,                   )
16   individually; and JOHN DOES I–X, inclusive,         )
                                                         )
17                      Defendant(s).                    )
     _____        )
18

19          Before the Court is Defendant Las Vegas Metropolitan Police Department's

20   ("LVMPD") **Motion for Summary Judgment** (#88, filed Feb. 5, 2015).  The Court has

21   considered Plaintiff Ronald D. Diggs' Opposition (#100, filed Mar. 27, 2015), and Defendant's

22   Reply (#103, filed May 27, 2015).

23          Also before the Court is Defendants Terry Roberts ("Officer Roberts") and Damian

24   Walburn's ("Officer Walburn") **Motion for Summary Judgment** (#89, filed Feb. 5, 2015).  The

25   Court has considered Plaintiff's Opposition (#98, filed Mar. 26, 2015), and Defendants' Reply

26   (#104, filed May 27, 2015).

**BACKGROUND**

Plaintiff Ronald Diggs ("Diggs") alleges that Defendants violated his constitutional rights by unlawfully arresting him and using excessive force to do so.  The incident arises from an encounter between Diggs and police officers from the LVMPD's Problem Solving Unit who were conducting an undercover patrol in the area of Fremont Street and North 21st Street in Las Vegas, Nevada.

Diggs alleges the following facts to support his claim.  At approximately midnight on April 20, 2009, Diggs was walking southbound on North 21st Street when he saw a white minivan drive by him traveling northbound. (#88–1, Mot. Ex. B, Ronald D. Diggs Dep. 74:1–21.) Diggs looked at the occupants of the minivan because they looked at him, but he did not make any gesture toward the minivan. (*Id*. at 75:18–22.)  Diggs heard the minivan turn around and he looked over his shoulder because he thought it was parking, but he continued to walk away from the minivan. (*Id*. at 80:3–16.)  He did not hear the minivan's doors open, nor did he hear anyone say anything to him. (*Id*. at 87:5–11.)  The next thing Diggs knew, he was struck in the back by surprise and without warning. (*Id*. at 80:12–81:6.)  The force caused Diggs to fly through the air and then fall onto the sidewalk, landing on his left knee and forearm. (*Id*. at 82:1–25.)  Diggs did not realize it was a police officer who struck him until he was handcuffed. (*Id*. at 75:23–76:14.) After complaining of injury, Diggs was transported to the hospital, where he was diagnosed with a sprain/strain of the left shoulder and left knee, and then transported to jail. (#88–6, Mot. Ex. N, 55–56.)  Diggs asserts that Officer Roberts tackled him and alleges that he sustained left knee instability, cervical spine problems, severe pain, and neck and nerve problems as a result of the incident. (#88–1, Mot. Ex. A, Pl.'s Interrog. Resp. 6:13–17.)

The officers, on the other hand, allege that they saw Diggs standing near an alleyway marked with a "no trespassing" sign. (#88–3, Mot. Ex. E, Officer Roberts Dep., 69:8–17.)  As they drove by Diggs, he stepped into the street and "flagged" at them, which they understood to be an offer to sell drugs. (*Id*. at 74:10–22.)  The officers turned around to contact

Diggs and he began to walk towards their minivan.  (#88–2, Mot. Ex. D, Officer Walburn Dep., 55:20–25.)  Diggs arrived at the front passenger area of the minivan at approximately the same time it came to a stop and Officer Walburn opened the passenger side door.  (*Id*.)  Diggs then abruptly turned around and began to walk away.  (*Id*. 58:24–60:20.)  Although the officers were dressed in plain clothes, they believed that Diggs recognized them as police officers because Officer Walburn was wearing a yellow LVMPD jacket.  (*Id*.)  The officers assert that one of Diggs' hands was concealed in a pocket, while his other hand was positioned at his mouth as if he was eating something, which they believed to be drugs.  (*Id*.)  The officers admit that they never verbally identified themselves as police, nor activated the undercover minivan's lights or siren.  (#88–3, Mot. Ex. E, 83:1–25.)  However, Officer Walburn testified that he commanded Diggs to stop and remove his hand from his pocket, but Diggs did not comply.  (#88–2, Mot. Ex. D, 56:17–23.)

Officer Roberts exited the driver's side of the minivan and heard Officer Walburn command Diggs to stop.  Two or three seconds later, Officer Roberts approached Diggs from behind, while Diggs was still walking away, and executed a tackle takedown maneuver in which he grabbed Diggs around the chest and upper body and took him to the ground.  (#88–3, Mot. Ex. E, 101:8–102:13; 106:3–16; 109:7–19.)  Officer Walburn then assisted Officer Roberts with handcuffing Diggs, who was kicking his feet and concealing his hand underneath his body.  (#88–2, Mot. Ex. D, 66:23–68:11.)  By all accounts, no more than forty seconds elapsed from the time the officers turned around and Officer Roberts tackled Diggs.

As a result of the incident, Diggs was charged by the LVMPD with (1) failing to change his address as an ex-felon, (2) walking in the roadway, (3) trespassing, and (4) littering.  (#88–6, Mot. Ex. O.)  On May 14, 2009, Diggs appeared at the Las Vegas Municipal Court and entered nolo contendere pleas to the walking in the roadway and trespassing charges.[1]  (#88–6, Mot. Ex. P.)  The court adjudicated Diggs guilty and sentenced him to credit for time served.  (*Id*.)

---

[1] The other charges were not pursued.

AO 72
(Rev. 8/82)

1    The LVMPD also completed an internal investigation and found that Officers Roberts and

2    Walburn did not violate the LVMPD's use of force policy.  (#88–8, Mot, Ex. Z.)

3          Diggs commenced this lawsuit on December 12, 2009.  Diggs filed his First

4    Amended Complaint on August 21, 2013, alleging five claims: (1) deprivation of constitutional

5    rights pursuant to 42 U.S.C. § 1983; (2) *Monell* violation of constitutional rights pursuant to 42

6    U.S.C. § 1983; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional

7    distress; and (5) assault and battery and negligence.  Defendants have now filed motions for

8    summary judgment.  For the reasons discussed below, the Court grants the LVMPD's motion.

9    With respect to Officer Roberts and Walburn's motion, the Court grants the motion as to Officer

10   Walburn, and the Court grants the motion in part and denies the motion in part as to Officer

11   Roberts.

12                                    **DISCUSSION**

13   **I.        Summary Judgment Standard**

14          The purpose of summary judgment is to avoid unnecessary trials when there is no

15   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.,* 18 F.3d

16   1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the movant shows that there

17   is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of

18   law." Fed. R.Civ. P. 56(a).  An issue is "genuine" if there is a sufficient evidentiary basis on

19   which a reasonable fact–finder could find for the nonmoving party, and a dispute is "material" if it

20   could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477

21   U.S. 242, 248–49 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

22   (1986).  Where reasonable minds could differ on the material facts at issue, however, summary

23   judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The

24   amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury

25   or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*,

26   718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

1    288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all

2    inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fischbach*

3    *& Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

4            The moving party bears the burden of showing that there are no genuine issues of

5    material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry

6    its burden of production, the moving party must either produce evidence negating an essential

7    element of the nonmoving party's claim or defense or show that the nonmoving party does not

8    have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

9    *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the

10   moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

11   "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

12   The nonmoving party "may not rely on denials in the pleadings but must produce specific

13   evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

14   *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

15   show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.

16   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

17   insufficient."  *Anderson*, 477 U.S. at 252.

18   **II.     42 U.S.C. § 1983 Individual Capacity Claims (First Claim)**

19           Diggs asserts that Officers Roberts and Walburn violated his constitutional rights

20   pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation

21   of a right secured by the Constitution and laws of the United States, and must show that the

22   alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*,

23   487 U.S. 42, 48 (1988).  Here, the parties do not dispute that the Officers were acting under the

24   color of state law but, instead, dispute whether they violated Diggs' Fourth Amendment rights.

25           The Fourth Amendment guarantees "[t]he right of the people to be secure in their

26   persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.

AO 72
(Rev. 8/82)

1    amend. IV.  Diggs alleges two distinct Fourth Amendment violations in his first claim for relief:

2    unlawful arrest and excessive force.

3          **A.    Unlawful Arrest**

4                Officers Roberts and Walburn argue that Diggs is barred by *Heck v. Humphrey*, 512

5    U.S. 477 (1994), from challenging his arrest because he was adjudicated guilty in Las Vegas

6    Municipal Court for walking in the roadway and trespassing.  "*Heck* precludes a section 1983

7    claim based on actions which would 'render a conviction or sentence invalid' where that

8    conviction has not been reversed, expunged, or called into question by issuance of a writ of habeas

9    corpus." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (per curium) (quoting *Heck*, 512

10   U.S. at 487).  The critical element a district court must consider is "whether plaintiff's action, if

11   successful, will demonstrate the invalidity of any outstanding criminal judgment." *Beets v. Cnty. of*

12   *L.A.*, 669 F.3d 1038, 1043 (9th Cir. 2012) (quoting *Heck*, 512 U.S. at 486–87).  "[I]f it would, the

13   complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence

14   has already been invalidated." *Ove v. Gwinn*, 264 F.3d 817, 822 (9th Cir. 2001) (quoting *Heck*,

15   512 U.S. at 487).  However, if a plaintiff's action, if successful, will not demonstrate the invalidity

16   of the criminal judgment, the action should proceed. *Id.*

17                Diggs argues that his nolo contendere pleas to the charges are insufficient to show

18   that he committed the underlying crimes.  However, the Ninth Circuit has regularly treated nolo

19   contendere pleas as convictions under the *Heck* doctrine.  *See Szajer v. City of Los Angeles*, 632

20   F.3d 607, 609–12 (9th Cir. 2011); *Radwan v. Cnty. of Orange*, 519 Fed.Appx. 490, 490–91 (9th

21   Cir. 2013).  Likewise, district courts in this Circuit have concluded that nolo contendere pleas are

22   convictions for *Heck* purposes.  *See, e.g., Haack v. City of Carson City*, No. 3:11–cv–00353, 2012

23   WL 3962453 (D. Nev. Sept. 10, 2012); *Kyles v. Baker*, Case No. 13–cv–04695, 2014 WL 5524256

24   (N.D. Cal. Oct. 31, 2014).  Moreover, the Nevada Supreme Court has held that a nolo contendere

25   plea is equivalent to a guilty plea because it authorizes the court to treat the defendant as if he

26   pleaded guilty. *State v. Lewis*, 178 P.3d 146, 147 n. 1 (Nev. 2008) (per curium).  "The purpose of

AO 72
(Rev. 8/82)

the *Heck* doctrine is to ensure that valid state criminal convictions and sentences are not, in effect, retroactively contradicted by subsequent federal civil actions" and that purpose applies to any conviction whether by guilty or nolo contendere plea. *Kyles*, 2014 WL 5524256, at *8 (internal quotation marks omitted). Thus, Diggs' nolo contendere pleas qualify as convictions under *Heck*.

Diggs' unlawful arrest claim is *Heck* barred. In order for Diggs to prevail on the claim, he would have to demonstrate that the police officers did not have probable cause to arrest him. Such a result would invalidate Diggs' underlying criminal convictions, which *Heck* squarely prohibits. *See Smithart*, 79 F.3d at 952 (finding *Heck* bars claims that officers lacked probable cause to arrest and brought unfounded charges). Furthermore, there is no evidence that Diggs' convictions have been overturned or invalidated. Accordingly, the Court grants Officers Roberts and Walburn's motion on the unlawful arrest claim.

**B.      Excessive Force**

Diggs alleges that Officers Roberts and Walburn violated his Fourth Amendment right to be free from excessive force. Specifically, Diggs asserts that the tackle by Officer Roberts constituted the excessive force. (*See* Dkt. #59, Am. Compl.) Diggs does not allege that any conduct after the tackle, including the handcuffing, constituted excessive force. With that in mind, the Court will conduct an individualized analysis of each Officers' actions relating to the alleged excessive force. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

**1.      Officer Walburn**

Officer Walburn moves for summary judgment because he argues there is no evidence he used excessive force in Diggs' arrest. The Court agrees. As Officer Walburn did not tackle Diggs, he did not participate in the alleged constitutional deprivation and, therefore, did not use excessive force against Diggs. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Nevertheless, Diggs argues that Officer Walburn is still liable for the alleged excessive force because he failed to intercede and prevent the tackle. To be sure, a police officer has "a duty to intercede when [his] fellow officers violate the constitutional rights of a suspect or

AO 72
(Rev. 8/82)

1   other citizen" and will be liable for the deprivation along with his fellow officers if he fails to

2   intercede.  *Cunningham*, 229 F.3d at 1289–90 (citing *United States v. Koon*, 34 F.3d 1416, 1447 n.

3   25 (9th Cir. 1994)).  However, an officer is liable for failing to intercede only if he had a "realistic

4   opportunity" to do so.  *Id*.

5               Here, the undisputed evidence shows that Officer Walburn did not have a realistic

6   opportunity to intercede and prevent Officer Roberts from tackling Diggs.  The Officers did not

7   formulate any plan to tackle Diggs.  (*See* Dkt. #88–2, Mot. Ex. D, Officer Walburn Dep. 54:1–20.)

8   Officer Walburn did not command Officer Roberts to tackle Diggs, nor did Officer Roberts tell

9   him that he was going to make the tackle.  (*Id*. at 63:15–24.)  Finally, even if Officer Walburn

10  knew that Officer Roberts was about to act, he did not have sufficient time to react in the few

11  seconds that elapsed before the tackle.  It is also notable that immediately after the tackle, Officer

12  Walburn *did* intervene to assist with safely handcuffing Diggs.  Accordingly, the Court grants

13  Officer Walburn's motion on the excessive force claim.

14                    **2.    Officer Roberts**

15              Officer Roberts moves for summary judgment on Diggs' excessive force claim

16  because he argues that his actions were objectively reasonable under the circumstances.  All claims

17  that law enforcement officers used excessive force in the course of an arrest, investigatory stop, or

18  other seizure of a citizen are to be analyzed under the Fourth Amendment and its standard of

19  objective reasonableness.  *Graham v. Conner*, 490 U.S. 386, 395 (1989).  The pertinent question is

20  whether the use of force was "objectively reasonable in light of the facts and circumstances

21  confronting [the officers], without regard to their underlying intent or motivation."  *Id*. at 397

22  (citation and internal quotation marks omitted).

23              The analysis of whether a specific use of force was reasonable "requires a careful

24  balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

25  interests against the countervailing governmental interests at stake."  *Id* at 396 (quoting *Tennessee*

26  *v. Garner*, 471 U.S. 1, 8 (1985)).  First, the Court evaluates the severity of the intrusion on the

1    individual's Fourth Amendment rights by assessing the "type and amount of force inflicted."

2    *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citation and internal quotation

3    marks omitted).  Second, the Court must assess the importance of the governmental interests at

4    stake by evaluating three primary factors articulated in *Graham*: (1) whether the suspect posed an

5    immediate threat to the safety of the officers or others; (2) the severity of the crime at issue; and

6    (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.  *Id*. at 872

7    (citing *Graham*, 490 U.S. at 396).  The most important factor is whether the suspect poses an

8    immediate threat to the safety of the officers or others.  *Id*. (citation and internal quotation marks

9    omitted).

10           Finally, the court balances the gravity of the intrusion on the individual against the

11   government's need for the intrusion.  *Id*. at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964

12   (9th Cir. 2003)).  The reasonableness inquiry evaluates all the relevant objective facts and

13   circumstances that confronted the officers in each particular case, "judged from the perspective of

14   a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight.'" *Id*. (quoting

15   *Graham*, 490 U.S. at 396).  "The calculus of reasonableness must embody allowance for the fact

16   that police officers are often forced to make split-second judgments—in circumstances that are

17   tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

18   situation." *Id*. (quoting *Graham*, 490 U.S. at 396-97).

19           Because the reasonableness balancing test "nearly always requires a jury to sift

20   through disputed factual contentions, and to draw inferences therefrom," courts should grant

21   summary judgment in excessive force cases "sparingly."  *Drummond ex rel. Drummond v. City of*

22   *Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citation omitted).  "This is because police

23   misconduct cases almost always turn on a jury's credibility determinations."  *Id*.  However, a court

24   may decide reasonableness as a matter of law if, "in resolving all factual disputes in favor of the

25   plaintiff, the officer's force was objectively reasonable under the circumstances." *Jackson v. City*

26   *of Bremerton*, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (citation omitted).

AO 72
(Rev. 8/82)

Here, viewing the facts in the light most favorable to Diggs, genuine issues of material fact remain regarding whether Officer Roberts used excessive force. Officer Roberts executed a tackle takedown maneuver on Diggs, causing Diggs to fall to the ground. To the extent that Officer Roberts suggests the use of force was not excessive because Diggs' injuries were *de minimis*, the Court finds the argument to be unpersuasive. While "neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force [,] [....] even when some force is justified the amount actually used may be excessive." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citations and internal quotation marks omitted); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (noting that even the overly tight application of handcuffs can constitute excessive force depending on the circumstances).

As to the governmental interests at stake, Officer Roberts saw Diggs commit the misdemeanor crimes of trespassing and walking in the roadway, neither of which are violent crimes. Even assuming it was reasonable for Officer Roberts to believe that Diggs could be armed, the Court cannot say that Diggs posed a threat to the safety of the officers or that he was resisting arrest such that Officer Roberts is entitled to summary judgment. A reasonable jury could conclude that Diggs posed no immediate threat to the officers' safety because he never threatened them with a weapon and he walked away from their location. Even if a trier of fact determines that Diggs' hand was concealed, questions of fact remain whether he posed an immediate threat under the circumstances especially considering, according to Diggs, he was never told to remove his hand from his pocket and he was tackled so quickly by surprise. *See Jaramillo v. City of San Mateo*, Case No. 13–cv–00441, 2014 WL 7240265, at *7–8 (N.D. Cal. Dec. 19, 2014) (noting that whether a suspect poses an immediate threat when he refuses to remove his hands from his pockets is reasonably disputable depending upon the other *Graham* factors).

In addition to disputing the level of danger Diggs posed, the parties dispute whether Diggs was actively resisting arrest. A reasonable jury could deduce that Diggs did not have any reason to know it was the police behind him, or that he was under arrest, considering that it was

dark outside, the police were in an unmarked van, they did not activate their emergency lights, and they did not verbally identify themselves.  Still, even if the trier of fact determines that Diggs recognized them as police officers and Officer Walburn did command Diggs to stop, a reasonable jury could find that responding with a physical tackle was excessive because Diggs was not physically assaultive towards the Officers.  *See Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1091 (9th Cir. 2013) ("While purely passive resistance can support some force, the level of force an individual's resistance will support is dependent upon the factual circumstances underlying that resistance.").  Balancing the amount of force used against the governmental interests, a reasonable jury could conclude that Officer Roberts used excessive force under the circumstances.  Accordingly, the Court denies Officer Roberts' motion on the excessive force claim.

### 3.    Qualified Immunity

Officer Roberts argues that if summary judgment on reasonableness grounds is precluded, he is still entitled to summary judgment based on qualified immunity.  Qualified immunity shields government officers from suit "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted).  Even where Fourth Amendment rights are violated, government officers may still be immune from suit where the right violated was not clearly established at the time of the violation.  *Liberal v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011).  Thus, having determined that Officer Roberts is not entitled to summary judgment based on the reasonableness of his actions, the Court may still grant summary judgment if Diggs' right was not clearly established.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  The court should make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.  An officer will be entitled to qualified immunity

AO 72
(Rev. 8/82)

1   even if he was mistaken in his belief that his conduct was lawful, so long as that belief was

2   reasonable.  *Wilkins*, 350 F.3d at 955.  The plaintiff bears the burden of showing that the right at

3   issue was clearly established.  *Sorrels v. Mckee*, 290 F.3d 965, 969 (9th Cir. 2002) (citation

4   omitted).  But a plaintiff need not establish a court previously declared the defendant's behavior

5   unconstitutional if it would be clear from prior precedent that the conduct was unlawful.  *Blueford*

6   *v. Prunty*, 108 F.3d 251, 254 (9th Cir. 1997).

7           Viewing the facts in the light most favorable to Diggs, Officer Roberts is not

8   entitled to summary judgment.  Recognizing that the moments preceding Officer Roberts' tackle

9   of Diggs may have been tense, the Court is, nevertheless, unable to conclude as a matter of law

10  that a reasonable officer would have determined that physically tackling a suspect who committed

11  misdemeanor violations, and who was not threatening the officers or resisting arrest, comported

12  with the *Graham* factors and the case law interpreting them.  Accordingly, the Court denies

13  Officer Roberts' motion.

14  **II.      42 U.S.C. § 1983 *Monell* Claim (Second Claim)**

15          Diggs asserts that the LVMPD violated 42 U.S.C. § 1983 by failing to properly

16  hire, train, supervise, and/or discipline Officers Roberts and Walburn.  The LVMPD seeks

17  summary judgment on each of these allegations.  Because Diggs failed to oppose the LVMPD's

18  motion with respect to inadequate hiring and training, he is deemed to have consented to granting

19  the motion on these claims.  *See* LR 7-2.  Therefore, two theories of municipal liability remain: (1)

20  failure to supervise; and (2) ratification of unconstitutional conduct through failure to discipline.

21          A municipal entity may be liable under § 1983 "only where the municipality itself

22  causes the constitutional violation through execution of a government's policy or custom, whether

23  made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

24  policy."  *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell v. Dep't*

25  *of Soc. Serv.*, 436 U.S. 658, 694 (1978)).  To establish municipal liability, a plaintiff must

26  demonstrate (1) that a municipal employee violated the plaintiff's rights, (2) that the municipality

AO 72
(Rev. 8/82)

had customs or policies that amount to deliberate indifference of the plaintiff's constitutional rights, and (3) that these customs policies were the moving force behind the employee's violation of the plaintiff's constitutional right. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193–94 (9th Cir. 2002) (citation omitted). Deliberate indifference requires that the municipality was on "actual or constructive notice that its omission would likely result in a constitutional violation." *Id*. at 1186 (citation omitted). A plaintiff may prove a municipal policy was the moving force behind a constitutional violation in three ways: (1) the municipality adopted an express policy; (2) a municipal employee commits a constitutional violation pursuant to the municipality's longstanding practice or custom; or (3) the person causing the violation has final policymaking authority. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). Diggs bases his claims on an informal custom or policy and ratification by a policymaker.

As to the existence of an informal custom or policy, municipal liability on such a theory must be founded on "a longstanding practices or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). Accordingly, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non–policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (citation omitted). However, the Ninth Circuit has long recognized that "a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (citations and internal quotation marks omitted).

Diggs has failed to present sufficient evidence to raise a genuine issue of fact that the LVMPD failed to supervise its police officers such that a policy or custom of excessive force developed. Failure to supervise can serve as the basis for liability under § 1983 if it amounts to "deliberate indifference to the rights of person with whom the police come into contact." *Davis*,

1    869 F.2d at 1235 (citation and internal quotation marks omitted).  However, the to extent that

2    Diggs supports his claim by citing to Officer Walburn's alleged supervisory omissions during the

3    incident, this fails because a review of a supervisor's conduct from a single incident is insufficient

4    to show a policy or custom of widespread inadequate supervision.

5              Moreover, Diggs has not provided sufficient evidence to create an inference that the

6    LVMPD has established a widespread policy of inadequate supervision through repeatedly failing

7    to discipline its officers for using excessive force.  While Diggs points out that the LVMPD

8    previously suspended Officer Roberts for one day as a reprimand for striking a handcuffed suspect,

9    he speculates that this suspension was inadequate.  However, Diggs fails to provide any specific

10   evidence showing that the reprimand was, in fact, inadequate or that the LVMPD otherwise has an

11   informal policy of doling out inadequate reprimands.  Therefore, there is insufficient evidence to

12   demonstrate that the LVMPD has an informal policy or custom of failing to supervise or discipline

13   its officers.

14             As to action by a final policymaker, a municipality may be held liable for a single

15   constitutional violation under a ratification theory if an authorized policymaker "approve[s] a

16   subordinate's decision and the basis for it."  *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1231

17   (9th Cir. 2014) (citing *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999)), *overruled on other*

18   *grounds by City & Cnty. of S.F. v. Sheehan*, 135 S.Ct. 1765 (2015).  Ratification generally requires

19   more than the final policymaker's "acquiescence" of an employee's conduct.  *Id*.  Instead, the

20   policymaker must make a "deliberate choice to endorse' the officer's actions."  *Id*. (quoting

21   *Gillette*, 979 F.2d at 1348).  Here, Diggs contends that the LVMPD ratified the conduct because

22   the Officers were not disciplined for their alleged constitutional violations.  However, Diggs has

23   not identified who he contends is a final policymaker.  Looking beyond that deficiency, Diggs also

24   fails to present sufficient evidence to raise a genuine issue of fact that a final policymaker made a

25   deliberate choice to endorse the Officer's actions.

26   . . . .

The Ninth Circuit has held that the mere failure to discipline officers who have been accused of unconstitutional conduct, without more, does not amount to ratification of the allegedly unconstitutional actions. *See id.* (holding the mere failure to discipline does not amount to ratification); *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003) (same), *overruled on other grounds by Brosseau v. Haugen*, 543 U.S. 194 (2004). To the extent that Diggs argues the LVMPD's internal affairs investigation constitutes "more" than a failure to discipline, the Court disagrees. The investigators conducted interviews and, albeit relying on the officers' recitation of the events, provided a report detailing their findings and rationale as to why neither Officer Roberts nor Officer Walburn violated the LVMPD's use of force policy. *See Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003) ("The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983."). Thus, there is insufficient evidence to demonstrate that a final policymaker ratified the allegedly unconstitutional conduct. Accordingly, the Court grants the LVMPD's motion.

## III.    State Law Claims

Diggs brings state law claims against Officers Roberts and Walburn for intentional and negligent infliction of emotional distress. Diggs also brings pendent claims of assault, battery, and negligence against both Officers and the LVMPD.

As an initial matter, the Court notes that the "use of force" forms the basis of all of Diggs' state law claims. As explained previously, Officer Walburn did not use excessive force against Diggs. Accordingly, the Court grants Officer Walburn's motion on all state law claims.

### A.    Immunity

In their respective motions Defendants argue they cannot be liable under Nevada law for Diggs' state law claims because they are entitled to immunity based on a discretionary action. Pursuant to NRS § 41.032, no action may be brought against a state officer or employee or any state agency or political subdivision that is "[b]ased upon the exercise or performance or the

1   failure to exercise or perform a discretionary function or duty on the part of the State or any of its

2   agencies or political subdivisions or of any officer, employee or immune contractor of any of

3   these, whether or not the discretion involved is abused."  Nev. Rev. Stat. § 41.032(2).

4          The Nevada Supreme Court has adopted the federal test for immunity based on a

5   discretionary action.  Under this test, immunity applies when the act (1) involves elements of

6   individual judgment or choice and (2) is based on considerations of social, economic, or political

7   policy.  *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).  In analyzing the immunity,

8   courts "must assess cases on their facts, keeping in mind Congress' purpose in enacting the

9   exception: to prevent judicial second–guessing of legislative and administrate decisions grounded

10  in social, economic, and political policy through the medium of an action in tort."  *Id*. (citations

11  and internal quotation marks omitted).  Nevada looks to federal decisional law for guidance on

12  what type of conduct the immunity should protect.  *Id*. at 727-28.

13         With respect to the state law claims Diggs alleges against the LVMPD, the Ninth

14  Circuit has held that "decisions relating to the hiring, training, and supervision of employees

15  usually involve policy judgments of the type Congress intended the discretionary–function

16  exception to shield."  *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).  This court,

17  relying on guidance from the Ninth Circuit, has specifically held that NRS §41.032 bars claims for

18  negligent hiring, training, and supervision.  *Neal–Lomax v. Las Vegas Metro. Police Dep't*, 574 F.

19  Supp. 2d 1170, 1192 (D. Nev. 2008).  Diggs fails to advance any argument regarding his theory of

20  liability as to the state law claims against the LVMPD.  To the extent that Diggs bases these claims

21  on inadequate hiring, training, or supervision of its officers, the LVMPD is entitled to immunity

22  here pursuant to NRS § 41.032.  *See Vasquez–Brenes v. Las Vegas Metro. Police Dep't*, 51 F.

23  Supp. 3d 999, 1013 (D. Nev. 2014) (holding state immunity barred battery and negligence claims

24  against the LVMPD based on theories of negligent hiring, training, or supervision).  Accordingly,

25  the Court grants the LVMPD's motion on the state law claims of assault, battery, and negligence.

26  . . . .

AO 72
(Rev. 8/82)

1     Officer Roberts is not entitled to immunity pursuant to NRS § 41.032 because both

2    prongs of *Martinez*'s test are not satisfied.  Under the first prong of the test, an officer's decision

3    regarding the amount of force to use under the circumstances is necessarily discretionary and

4    requires an officer's individual judgment and choice.  *Huff v. N. Las Vegas Police Dep't*, No.

5    2:10–cv–01394, 2013 WL 6839421, at *10 (D. Nev. Dec. 23, 2013).  Officer Roberts had to make

6    individual judgments regarding the necessity to use force against Diggs based on the circumstances

7    confronting him in a rapidly evolving situation.  Therefore, Officer Roberts' decision here was

8    discretionary in nature.

9     However, Officer Roberts' conduct does not meet the second prong of the test.

10    Immunity attaches under the second prong "if the injury-producing conduct is an integral part of

11    governmental policy–making or planning, if the imposition of liability might jeopardize the quality

12    of the governmental process, or if the legislative or executive branch's power or responsibility

13    would be usurped." *Martinez*, 168 P.3d at 729 (citation omitted).  "[D]ecisions regarding the

14    amount of force to use are not the kind of policy decisions the discretionary function exception

15    was designed to shield." *Huff*, 2013 WL 6839421, at *10; *Vasquez–Brenes*, 51 F. Supp. 3d at

16    1013.  Imposing liability on officers who exceed the permissible use of force does not affect an

17    integral part of governmental policy making, nor does it jeopardize the quality of the governmental

18    process.  *Huff*, 2013 WL 6839421, at *10; *Vasquez–Brenes*, 51 F. Supp. 3d at 1013.  The amount

19    of force a police officer uses to effectuate an arrest does not further any public policy goals, but

20    rather involves the officer's application of his training to the circumstances confronting him at the

21    time.  Finally, evaluating whether a police office used excessive force does not usurp the

22    legislative or executive branch's power or responsibility because "[n]o branch of government has

23    the legitimate power to violate the Fourth Amendment of the United States Constitution." *Huff*,

24    2013 WL 6839421, at *10.  Based on these considerations, Officer Roberts is therefore not entitled

25    to immunity here based on a discretionary action.  Accordingly, the Court denies Officer Roberts'

26    motion based on immunity.

AO 72
(Rev. 8/82)

**B.     Causes of Action**

**1.     Intentional infliction of emotional distress**

Diggs asserts an intentional infliction of emotional distress ("IIED") claim against Officer Roberts.  To recover for IIED, a plaintiff must prove that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing emotional distress or with reckless disregard for the plaintiff's emotional distress, (2) the plaintiff suffered severe or extreme emotional distress as a result, and (3) the defendant's actions were the proximate cause of plaintiff's emotional distress.  *Star v. Rabello*, 625 P.2d 90, 91–92  (Nev. 1981).  In order for conduct to be extreme and outrageous it must be "outside all possible bounds of decency and [ ] regarded as utterly intolerable in a civilized community."  *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks omitted).

Here, Officer Roberts argues that Diggs has produced insufficient evidence to support his claim.  The Court agrees.  Diggs has pointed to no part of the record to demonstrate that Officer Roberts acted with the intent to cause, or reckless disregard for causing, emotional distress.  In a rapidly evolving situation, Officer Roberts tackled Diggs with the purpose of detaining him.  After the initial tackle, Officer Roberts did not behave in any manner that was violative of Diggs' constitutional rights, such as may be the case if, for example, Officer Roberts had intentionally injured Diggs after he had been restrained.  Instead, Officer Roberts and Walburn properly handcuffed Diggs and called for medical assistance when they realized Diggs sustained injuries from the tackle.  Accordingly, the Court grants Officer Roberts' motion on the IIED claim.

**2.     Negligent infliction of emotional distress**

Diggs asserts a negligent infliction of emotional distress ("NIED") claim against Officer Roberts.  To bring a NIED claim, a *bystander* must have been "located near the scene," "emotionally injured by the contemporaneous sensory observance" of the acts, and "closely related to the victim."  *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999) (emphasis added).  As this Court . . . .

1  has repeatedly held, direct victims may not bring NIED claims as they are not bystanders.  *See,*

2  *e.g.*, *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 934–35 (D. Nev. 2010).

3        Diggs alleges that he suffered emotional distress as a result of Officer Roberts'

4  negligent conduct.  Diggs has confused negligence claims with parasitic emotional distress

5  damages with claims for NIED.  The two causes of action, negligence with emotional distress

6  damages and NIED, are simply not the same.  Many attorneys have misinterpreted the Nevada

7  Supreme Court's decision in *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995), wherein the

8  court held that direct victims of negligence could obtain emotional distress damages.  This

9  decision did not do away with the bystander requirement of NIED claims, it merely held that

10 plaintiffs pleading negligence may obtain emotional distress damages as NIED claimants may.  *Id.*;

11 *see Carriage Cemetery*, 727 F. Supp. 2d at 934–35 (explaining Nevada Supreme Court's holding

12 in *Shoen*).  Thus, as Diggs was a direct victim of the alleged negligence, the claim fails as a matter

13 of law.  Accordingly, the Court grants Officer Roberts' motion on the NIED claim.

14        **3.      Negligence**

15        Diggs asserts a negligence claim against Officer Roberts.  In a negligence action,

16 the plaintiff must demonstrate that: (1) the defendant had a duty to exercise due care with respect

17 to the plaintiff; (2) defendant breached this duty; (3) the breach was the legal cause of the

18 plaintiff's injury; and (4) the plaintiff was damaged.  *Scialabba v. Brandise Const. Co., Inc.*, 921

19 P.2d 928, 930 (Nev. 1996).

20        "Whether a defendant owes a plaintiff a duty of care is a question of law."  *Id.*

21 Police officers owe a duty of care to the members of the general public.  *Vasquez–Brenes*, 51 F.

22 Supp. 3d at 1014.  As explained previously, genuine issues of material fact remain whether Officer

23 Roberts adequately assessed the necessity to use the amount of force he ultimately used against

24 Diggs.  Accordingly, the Court denies Officer Roberts' motion on the negligence claim.

25 . . . .

26 . . . .

AO 72
(Rev. 8/82)

### 4.        Assault and Battery

Diggs asserts assault and battery claims against Officer Roberts.  To establish an assault claim, a plaintiff must show the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact.  *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts, § 21 (1965)).  Diggs alleges that Officer Roberts approached him from behind and tackled him by surprise and without warning.  Thus, Diggs could not have had a reasonable apprehension of immediate bodily harm because he was neither aware of Officer Roberts presence behind him, nor did he see Officer Roberts, before the surprise tackle.  *See Romero v. Las Vegas Metro. Police Dep't*, No. 2:10–cv–00537, 2011 WL 1561077, at *3 (D. Nev. Apr. 25, 2011).  As such, Diggs' claim fails as a matter of law.  Accordingly, the Court grants Officer Roberts' motion on the assault claim.

To establish a battery claim, a plaintiff must demonstrate that the defendant (1) intended to cause harmful or offensive contact and (2) such contact did occur.  *Burns*, 175 F. Supp. 2d at 1269 (citing Restatement (Second) of Torts, §§ 13, 18)).  In Nevada, "[p]olice officers are privileged to use the amount of force reasonably necessary and are liable for battery to the extent they use more force than is reasonably necessary."  *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (applying Nevada law); *see Yada v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996). Therefore, the standard for battery by a police officer under Nevada law is the same as a § 1983 claim.  As discussed previously, genuine issues of material fact remain regarding whether Officer Roberts used reasonable force to arrest Diggs.  Accordingly, the Court denies Officer Roberts' motion on the battery claim.

. . . .

. . . .

. . . .

. . . .

. . . .

AO 72
(Rev. 8/82)

1

2                               **CONCLUSION**

3              Accordingly, and for good cause appearing,

4              IT IS HEREBY ORDERED that Defendant Las Vegas Metropolitan Police

5    Department's Motion for Summary Judgment (#88) is GRANTED.

6              IT IS FURTHER ORDERED that Defendants Terry Roberts and Damian Walburn

7    Motion for Summary Judgment (#89) is GRANTED in part and DENIED in part as follows:

8         •    Defendant Damian Walburn's Motion is GRANTED.

9         •    Defendant Terry Roberts' Motion is GRANTED as to Plaintiff's claims for

10             intentional infliction of emotional distress, negligent infliction of emotional

11             distress, and assault, and DENIED as to all other claims.

12

13

14   Dated: June 30, 2015.

15

16                                    _____

17                                    **ROGER L. HUNT**
                                      **United States District Judge**

18

19

20

21

22

23

24

25

26

AO 72
(Rev. 8/82)